**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: ERN REYNOLDS, | ) | **CHAPTER 7** |
| Debtor. | ) | **Case No. 09-71964** |
| | ) | |

---

| | | |
|---|---|---|
| **ERN REYNOLDS,** | ) | |
| Debtor. | ) | |
| | ) | |
| **REYNOLDS LIVING TRUST** | ) | |
| **BY ERN REYNOLDS, ITS TRUSTEE,** | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| **v.** | ) | **Adv. Proc. No. 11-07012** |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| **ATTORNEYS[1] LIABILITY** | ) | |
| **PROTECTION SOCIETY, INC., A** | ) | |
| **MONTANA CORP. a/k/a ALPS,** | ) | |
| **DARREN THOMAS DELAFIELD, ESQ,** | ) | |
| **and** | ) | |
| **CHARLES R. ALLEN, JR., TRUSTEE,** | ) | |
| Defendants. | ) | |

---

## <u>MEMORANDUM DECISION</u>

The Complaint initiating this adversary proceeding was filed on March 4, 2011 by

the Debtor, Ern Reynolds, *pro se*, both in his capacity as debtor in the underlying bankruptcy

case and as trustee of the Reynolds Living Trust (the "Trust"), seeking monetary damages and

other relief against his former bankruptcy counsel, Darren T. Delafield (the "Attorney"), the

latter's professional liability insurance carrier, Attorneys Liability Protection Society ("ALPS"),

and Wells Fargo Bank, N.A. (the "Bank"), which holds two deeds of trust upon property owned

---

[1] The Complaint lists Attorney Liability Protection Society, Inc. as a defendant, however, the pleadings filed on behalf of this defendant list the proper name as Attorneys Liability Protection Society, Inc.

by the Trust securing the payment of two notes upon which both the Trust and the Debtor

personally are liable.  He has also joined Charles R. Allen, Jr., Trustee of the Debtor's

bankruptcy estate (the "Trustee"), as a defendant but does not seek any relief against him, and

the latter has not filed any responsive pleading to the Complaint or otherwise participated in this

proceeding.  Each of the other defendants has filed an answer as well as a motion to dismiss.

More specifically, ALPS has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

asserting that the Complaint fails to state a claim upon which relief can be granted, while both

the Bank and the Attorney have filed motions for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c).  For the reasons that follow, the Court will grant the motions and dismiss the

Complaint with prejudice.

## **FINDINGS OF FACT**

The Debtor filed a voluntary petition under Chapter 13 on July 31, 2009.  On the

same date, he also filed an adversary proceeding against the City of Roanoke alleging, among

other things, that the City had deprived him of rental income by impermissibly designating the

property owned by the Trust as a single-family dwelling.  On October 15, 2009, the Debtor filed

a motion to convert the case to one under Chapter 7, which was granted by the Order entered

October 16, 2009.  At the same time, the Debtor filed a Statement of Intention indicating that he

intended to reaffirm the two debts owed to the Bank and thereby retain the property owned by

the Trust.  The meeting of creditors required by 11 U.S.C. § 341(a) was held on November 12,

2009.

According to the Debtor, on March 19, 2010, the Attorney wrote to the Bank's

predecessor in interest, Wachovia Bank, National Association, to inquire about reaffirming the

debts, and Wachovia sent the Debtor reaffirmation forms to fill out and present to the Court.

2

There is nothing to suggest that the Debtor ever filled out the forms and presented them to the

Attorney for review, and the Debtor admits in his Complaint that he misplaced the forms

somewhere in his home.

The Debtor asserts that the Attorney planned to delay the entry of the discharge

order until the adversary proceeding against the City of Roanoke was concluded by refraining

from filing a Certificate of Debtor Education showing that the Debtor completed a financial

management course in compliance with 11 U.S.C. § 727(a)(11).  However, the Attorney

submitted the Certificate of Debtor Education on August 9, 2010, and the discharge order was

entered on August 10, 2010.  No reaffirmation agreement was made or filed prior to that time.

The Debtor attempted to obtain replacement reaffirmation forms from the Bank

on September 2, 2010, but was told that it was too late to reaffirm the debts because there was a

sixty day deadline for filing such an agreement that had lapsed and it was not possible to enter

into an enforceable reaffirmation agreement after the Debtor received his discharge.  The Debtor

then consulted with the Attorney and asked him to contact his malpractice insurance carrier.  The

Attorney left a message with ALPS in the Debtor's presence.  On October 1, 2010, the Debtor

sent a letter to ALPS, the Bank, and the Attorney asking, among other things, for the parties to

negotiate a modification of his obligations to the Bank so as to prevent the Bank from

foreclosing on the property owned by the Trust.  The Debtor asserts that neither the Bank nor

ALPS replied to this letter.  On December 1, 2010, the Debtor went to ALPS's Richmond office

and had an attorney for ALPS call the Attorney to discuss the matter.  The substance of this

conversation is not disclosed by the evidence.

On January 6, 2011, the Bank filed a motion seeking relief from the automatic

stay with respect to the property owned by the Trust.  The Attorney filed an answer to the motion

3

on behalf of the Debtor on January 21, 2011.  On February 3, 2011, the Debtor, acting as the

trustee of the Trust, filed a motion asking the Court to allow the Trust to intervene as a

respondent to the Bank's motion and to join ALPS so that the Trust could bring a cross-claim

against it.  The Debtor set this motion for hearing on April 11, 2011, and then filed a motion to

continue the hearing on the Bank's motion from February 7, 2011 to April 11, 2011.  According

to the Debtor, he then transmitted an application for a modification of the terms of his debt under

the Home Affordable Modification Program ("HAMP") to the Bank on February 4, 2011.  The

Court heard arguments on February 7 and subsequently granted the Bank's motion and denied

the Debtor's motion for a continuance in the Memorandum Decision and Order entered February

10, 2011, at docket number 67.

The Debtor filed a motion seeking to place $22,392.88 in the Registry of Court on

February 18, 2011 and a motion asking for much the same relief as is sought in this adversary

proceeding on February 22, 2011.  On February 25, 2011, this Court issued a series of orders

denying the Debtor's various motions.  The Debtor then filed the present adversary proceeding.

The Debtor was subsequently allowed to deposit the $22,392.88 into the Registry of Court by the

Order entered May 20, 2011 in this adversary proceeding.


## CONTENTIONS OF THE PARTIES

### THE DEBTOR'S COMPLAINT

The Debtor's Complaint can hardly be said to be a model of clarity.  A careful

reading of the Complaint reveals that the Debtor is seeking three forms of relief.  First, the

Debtor seeks damages from the Attorney, ALPS, and the Bank.  Next, the Debtor asks that

ALPS be required to post a bond in this Court.  Finally, the Debtor asks that the Bank be

4

enjoined from foreclosing on the Trust property so long as the Debtor's money remains in the Registry of Court and ALPS's liability is undetermined and further asks that the Bank be forbidden from pursuing the money in the Registry of Court until ALPS's obligations in this case have been satisfied. The Debtor appears to rely on the same arguments to justify each form of relief.

First, the Debtor argues that damages are warranted against the Attorney, ALPS, and the Bank due to the alleged legal malpractice of the Attorney and the others' role in inducing or otherwise contributing to the alleged malpractice. Although the Debtor argues that all three defendants are liable, he is primarily asserting the claim against the Attorney. Specifically, he argues that the Attorney committed legal malpractice by not negotiating a reaffirmation agreement with the Bank prior to entry of the order of discharge. He acknowledges that, to make out a valid cause of action for malpractice, a plaintiff must establish both liability and damages. As for liability, he argues that this Court's February 10, 2011 Memorandum Decision, which states that a reaffirmation agreement must be made prior to discharge, establishes the Attorney's negligence. Specifically, he argues that in his petition and in his Statement of Intention filed along with his motion to convert, he indicated his intent to reaffirm the debts owed to the Bank. He contends that the Attorney intended to withhold the Certificate of Debtor Education and thereby prevent the issuance of a discharge until the adversary proceeding against the City of Roanoke had been concluded. The Debtor asserts that reaffirmation prevents foreclosure and he was therefore harmed by the Attorney's failure to obtain this benefit for him through either negotiations with the lender toward a voluntary reaffirmation agreement or through HAMP, which he asserts imposes a mandatory duty upon the lender to respond to any request for relief, before the Attorney mistakenly filed the Certificate of Debtor Education and thereby secured a

5

discharge for the Debtor.  He also argues that the money he deposited into the Registry of Court,

which is the proceeds of a loan he obtained from his then fiancée (now his wife), demonstrates

that he could cure the arrearage on his debts owed to the Bank.  He states that the damages in

this case amount to $1,017.84 per month, which represents the sum of the regular monthly

payments on the two debts owed to the Bank, dating from the time the Attorney committed the

malpractice.  The Debtor asks the Court to decide the date on which the malpractice occurred,

but asserts that it must have been either August 10, 2010, which is the date of the discharge, or

January 11, 2010, which is 60 days from the first meeting of creditors.

The Debtor also argues that ALPS is "secondarily liable" for the alleged

malpractice.  This liability is apparently based on ALPS's refusal to communicate to both the

Debtor and the Attorney about the malpractice allegation and its failure to mount a legal defense

of the Attorney or attempt to mitigate any damages suffered by the Debtor.  The Debtor also

contends that ALPS is not properly registered with and receives no regulatory scrutiny from

Virginia.  Because of this alleged lack of regulation, the Debtor also asks the Court to require

ALPS to post a performance bond in the present case.

Finally, the Debtor assigns "tertiary responsibility" to the Bank for the alleged

malpractice.  The Debtor claims that this liability is based on the Bank's refusal to respond to the

Debtor's and Attorney's inquiries about relief under HAMP, which the Debtor asserts imposes a

duty upon any lender participating in the program to respond to an application filed by a debtor,

and its lack of response to the Debtor's indication of a desire to reaffirm the debts on his

Statement of Intention.  In addition to asking the Court to hold the Bank liable for a portion of

his damages resulting from the Attorney's alleged malpractice, the Debtor also asks the Court to

enjoin the Bank from foreclosing on the property owned by the Trust and from pursuing the

6

money he deposited in the Registry of Court.

### THE ATTORNEY'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Attorney's first assertion in his motion is that the Debtor lacks standing to bring an action for any alleged legal malpractice occurring after the filing of the bankruptcy petition.  He argues that the bankruptcy estate includes any interest in property that the estate acquires after the petition is filed and that a legal cause of action is an interest in property for this purpose.  The Attorney argues that any cause of action arising from the Attorney's handling of a bankruptcy matter after the petition is filed would therefore belong to the estate and could only be brought by the Trustee.  He argues that the Debtor therefore lacks standing to pursue his cause of action.

The Attorney further states that even if the Debtor had legal standing, he has still failed to state a claim for legal malpractice.  He argues that, in order to make out a claim for malpractice under Virginia law, the Debtor would need to present evidence that he would have prevailed in the underlying case.  In this case, he argues, that would require the Debtor to plead facts indicating and introduce evidence showing that the Bank would have agreed to reaffirm the debts but for some breach by the Attorney.  He argues that the Debtor has failed to allege any facts that would show that the Bank would have agreed to reaffirm the debt absent some negligence on the part of the Attorney and the Debtor has instead alleged that the Bank refused to even discuss the matter.  The Attorney further argues that, as negotiating a reaffirmation agreement is a purely voluntary process, there was nothing he could have done to compel the Bank to enter into such negotiations.

Furthermore, the Attorney asserts that, if the Debtor had negotiated a reaffirmation agreement with the Bank, the Attorney would have been required to sign a certification that the agreement would not pose an undue hardship to the Debtor for the agreement to be enforceable.  The Attorney argues that the Debtor has failed to allege that he would have made the required certification.  In addition, the Attorney affirmatively states that he would not have been willing to make the certification because, the Debtor was not receiving rental income from the property prior to the entry of the discharge, was facing medical bills for his father's medical care, and was not able to continue to make the regular payments on the debts.

The Attorney also argues that the Debtor cannot make out a claim for malpractice arising from his filing of the Certificate of Debtor Education.  Specifically, he argues that he was required to file the certificate within sixty days of the first date set for the meeting of creditors.  Here, the first creditors' meeting held after the case was converted to Chapter 7 was held on November 12, 2009, so he argues that the certificate was due on December 27, 2009.  The Attorney states that if the certificate is not timely filed, then the bankruptcy case will be closed without a discharge. The Attorney admits that he did attempt to delay filing the certificate at the Debtor's request, but he was ultimately required to file it to preserve the Debtor's discharge.  He argues that filing the certificate did not breach any duty owed to the Debtor and was in fact a fulfillment of his duty arising from his retainer agreement with the Debtor to represent him with respect to the financial management course and secure for him a discharge.

Finally, the Attorney argues that the Debtor has also failed to state a claim for malpractice arising out of the Attorney's failure to see that the loans were modified pursuant to HAMP.  The Attorney first argues that the Debtor may not be eligible for HAMP.  Specifically,

8

he argues that HAMP is only available to modify loans relating to single family, one to four unit properties.  In this case, the Attorney points out that the Debtor's Complaint stated that he sought bankruptcy relief in part because of the City of Roanoke's refusal to allow him to have a paying tenant who is not a family member.  This suggests, the Attorney argues, that the Debtor did not intend to use the property as a single family home.  In addition, the Attorney asserts that HAMP applies only to loans that are secured by first liens on the subject property.  One of the debts owed to the Bank is secured by a second lien on the property, so HAMP modification would be unavailable for that loan.  The Attorney argues that he cannot be liable for failing to secure a modification under a program for which the Debtor was ineligible.  The Attorney also argues that the Debtor's assertion that HAMP is mandatory on lenders is incorrect.  He argues that it is not mandatory on the Bank and, even if it were, it would not make the modification of a particular loan mandatory.  In addition, the Attorney argues that courts have routinely held that HAMP does not create a private right of action for a borrower to assert a claim against a lender in an attempt to force modification.  The Attorney argues that, because modification pursuant to HAMP is not mandatory, the Debtor has alleged nothing to indicate that the Bank would have modified his loans pursuant to HAMP and the Attorney cannot be held liable for failing to secure a modification that the Bank was apparently unwilling to offer.  Finally, the Attorney argues that a modification under HAMP is still available after discharge, so the Debtor has not been damaged by his alleged failure to secure the modification prior to the entry of the discharge.

## ALPS'S MOTION TO DISMISS

ALPS's first argument for the dismissal of the Debtor's Complaint against it is that the Debtor lacks standing to bring a direct action against it.  It argues that, as a general rule,

9

an injured person who is a third party beneficiary to an insurance contract has no direct cause of action against the insurer.  ALPS admits that Virginia does have a statute that authorizes a direct action against an insurer, but it argues that this statute only applies to policies insuring against personal injury, death, or property damage and only authorizes a direct action where the injured person holds an unsatisfied judgment against the insured party.  Because the policy is not of the type covered by the statute and because the Debtor has not yet obtained a judgment against the Attorney, ALPS argues that the Debtor cannot maintain a direct action against it, the Attorney's insurer.

Next, ALPS argues that the Debtor has failed to state a valid malpractice claim against it.  ALPS notes that the Debtor purports to raise its legal malpractice claim "secondarily" against it.  It notes that it is not sure what a secondary legal malpractice claim is, but argues that any malpractice action against it would fail for a number of reasons.  First, ALPS is not a lawyer or a law firm, so it could not have entered into an attorney-client relationship with the Debtor. ALPS also argues that the Debtor's Complaint fails to allege that the Attorney's alleged breach of duty caused his alleged damages.  It points out that the Debtor admits to mislaying the reaffirmation forms originally sent to him and that he did not seek replacements until almost six months later, which was after he was discharged.  ALPS therefore argues that it was the Debtor's negligence, not that of the Attorney, that led to the failure to file a reaffirmation agreement prior to the entry of the discharge.  In addition, ALPS argues that the Debtor has alleged no facts supporting the inference that the Bank would have agreed to reaffirm the mortgage debts if he had completed the documentation and submitted it to the Bank for approval.  In fact, ALPS argues that, because there was a default in the payments due on the loans, the Bank indicated that it would not execute a reaffirmation agreement with the Debtor.

10

Finally, ALPS argues that, while the issue is irrelevant to the Debtor's failure to reaffirm his loans or any alleged malpractice, it is properly registered with Virginia licensing authorities. ALPS states that it is a professional liability insurance company and is regulated by and properly registered with the Virginia Bureau of Insurance pursuant to Va. Code Ann. § 38.2-5103. ALPS argues that it is therefore properly authorized to transact business in Virginia.

THE BANK'S MOTION FOR JUDGMENT ON THE PLEADINGS

In its motion the Bank argues that, boiled down to basics, the allegations of the Complaint revolve around the Bank's alleged refusal to review and modify the terms of the loans pursuant to the HAMP guidelines and its alleged refusal to enter into a reaffirmation agreement with the Debtor. The Bank argues that the Debtor has failed to state a valid cause of action stemming from either.

As to the allegations about HAMP, the Bank states that the Debtor lacks standing to assert a cause of action for the Bank's alleged violation of HAMP guidelines. It argues that recent case law has made it clear that there is no private right of action for alleged violations of the HAMP guidelines. In addition, the Bank argues that, under Virginia law, lenders are under no duty, arising either by statute or the common law, to consider a modification of previously agreed to contract terms. Thus, the Bank argues that the Debtor has failed to state a plausible claim for relief under federal or state law against it for its alleged failure to comply with HAMP guidelines.

With regard to the allegations about the Bank's failure to enter into a reaffirmation agreement with the Debtor, the Bank first points out that, as the Debtor admits in his Complaint, reaffirmation is a voluntary process that requires the agreement of both the

11

creditor and the debtor.  It also notes that the Debtor admittedly did not return the signed

reaffirmation forms to the Bank for review as the Debtor states that the forms were lost and he

did not seek replacements until after his discharge had been entered.  It also argues that the

affidavit of the Attorney submitted with his motion for judgment shows that the Attorney would

not have executed the certification required to make the agreement enforceable given the

delinquency and presumption of undue hardship.  The Bank also argues that the Court probably

would not have been able to approve the agreement had it been submitted.  In sum, the Bank

argues that its conduct establishes that no agreement with the Debtor was accepted and there are

no facts or circumstances that the Debtor could prove that would show that the Bank would have

agreed to enter into a reaffirmation agreement with the Debtor but for some wrongdoing.  The

Bank therefore argues that the Debtor has failed to state a claim based on the failure to enter into

a reaffirmation agreement.

DEBTOR'S REPLY

The Debtor begins by arguing that the retainer agreement, through which he hired

the Attorney to file the bankruptcy case and the case against the City of Roanoke, imposed duties

on both the Debtor and the Attorney and the implied covenant of good faith and fair dealing in

the contract would require the Attorney to exert his best efforts to obtain a reaffirmation

agreement.  He also argues that his petition contained an explicit promise to reaffirm the two

debts.  He states that, as of the date of filing, he was current in payments on both obligations

except for the payments due July 23, 2009, which he argues were still within the grace period

when the petition was filed.  He therefore suggests that, in the early stages of the case, the

Attorney would have easily been able to reach an agreement with the Bank to resume regular

payments and was obligated to negotiate a reaffirmation agreement that he could present to the

12

Court.  When the Bank would not respond to his inquiries, the Attorney was obligated, the

Debtor argues, to seek the aid of the Court to force the Bank to respond.  He admits that

reaffirmation is normally voluntary, but he argues that the Bank's acceptance of funds under the

Troubled Asset Relief Program ("TARP") eliminated its usual right to refuse to respond.

Specifically, he alleges that HAMP and the Emergency Homeowners' Loan Program ("EHLP")

require the Bank, once the Debtor submitted his application under each program, to undertake

negotiations until such time as it determines that the Debtor is ineligible for the programs.

       In response to the argument that he was financially unable to reaffirm the debts,

he argues that the Attorney ignores three potential sources of income that would allow him to

cure the arrearage on the loans and resume regular payments even if the Bank did not modify the

loans.  Specifically, he points to his income from renting the three rentable units on the property,

the possibility of his wife extending a loan to the Trust, and a life insurance policy that would

pay out enough to pay off the loans upon the Debtor's death.  With regard to the rent, he asserts

that he had one tenant who moved in on July 1, 2009, but he admits that all three units were not

occupied until October 1, 2010.  He further states that the monthly income stream from the rent

of all three units is between $1,750 and $1,825, which he argues would be enough to pay his

regular payments on the loans.  He appears to argue that these income sources would give him

stability sufficient to allow the Attorney to execute the certification required for the agreement to

be enforceable.  Similarly, the Debtor argues that these three sources of income would also give

the Court a basis to approve the agreement as not imposing an undue hardship.

       The Debtor further argues that the issuance of the discharge and the Court's

ruling that a reaffirmation agreement must be made prior to the issuance of a discharge took both

him and the Attorney by surprise.  He says that he does not remember being advised by the

13

Attorney of any deadline to reaffirm the debts until after the ruling and argues that he and the Attorney believed that the case against the City of Roanoke would have to be concluded prior to the discharge.  The Debtor argues that the Attorney intended to delay the entry of the discharge by withholding of the Certificate of Debtor Education but the Attorney mistakenly filed it prematurely.  The Debtor admits that he misplaced the reaffirmation agreement forms, but he argues that, while contributory negligence is a defense to a tort action in Virginia, it would not apply in the bankruptcy context.  He says that common law tort principles should not apply to the bankruptcy process, which is primarily governed by statutes.  He therefore argues that the Attorney is liable for malpractice stemming from his failure to negotiate a reaffirmation agreement and the mistaken filing of the Certificate of Debtor Education.  As for the amount of damages stemming from this alleged malpractice, the Debtor asserts that the "outside boundary" would be the total of his monthly payments not made since June 23, 2009, unless the arrearage can be partially forgiven or the terms of the loans modified to otherwise prevent foreclosure.

In response to the Attorney's argument that only the Trustee has standing to pursue the malpractice action, the Debtor argues that he and the Attorney visited the Trustee in his office and requested him to take more aggressive action.  He states that the Trustee made it clear that his office was not large enough to handle non-routine litigation and argues that this litigation is anything but routine.  He therefore suggests that the Trustee refused to pursue the case.  Finally, the Debtor argues that, if the Attorney is correct and he lacks standing, he could never seek legal redress for the damages he has suffered.

The Debtor asserts that there is no defect in his allegations regarding HAMP relief.  He first argues that he is in fact eligible to participate in HAMP.  He asserts that the phrase "single family 1-4 unit property" is ambiguous and argues that the HAMP and EHLP

14

guidelines depend on case-by-case determinations.  He admits that a HAMP modification would only be available for the first deed of trust on the property, but that if the first loan were modified sufficiently, the second loan could be paid off completely.  He argues that, in order for the lender to be able to refuse to negotiate once he applied for relief under HAMP or EHLP, the Bank would have had to have repaid all TARP funds, made no effort to foreclose on the property, and determined that the Debtor was ineligible for relief under both programs.  The Debtor further argues that the Bank is now barred from asserting that he is ineligible because of the doctrines of laches, equitable estoppel, and reticence, which he argues is a doctrine under Scottish law that punishes unresponsive silence.[2]  The Bank sent the Debtor information about HAMP twice, then refused to communicate about it further.  The Debtor argues that this is the classic formula for fraud.

As to the Bank, the Debtor argues that he is not complaining about its refusal to enter into a modification agreement but its refusal to communicate in a way that might open negotiation.  Further, he argues that he is not pursuing a private right of action under HAMP or EHLP.  He notes that he had a contract with the Bank and that contract includes an implied covenant of good faith and fair dealing.  He argues that the Bank breached that covenant by refusing to communicate in any way that may open up negotiations toward a modification of the loan.

As to ALPS, the Debtor argues that, upon his discovery of malpractice by the Attorney, he became a third party beneficiary to the contract of insurance between ALPS and the Attorney.  He argues that an attorney-client relationship between him and ALPS was therefore

---

[2] The Debtor has not provided any authority explicating this doctrine or establishing its application to this dispute.

not necessary for him to make out a cause of action.  He argues that every client of an insured

lawyer is contemplated to be a third party beneficiary of the lawyer's insurance contract.  He

argues that he notified ALPS of the claim by having the Attorney call ALPS and notify it of his

claim, calling a claims attorney with ALPS in Montana, transmitting a letter by certified mail

that contained a detailed explanation of the claim, and meeting with a claims attorney in

Richmond and having the claims attorney speak with the Attorney about the claim.  He further

claims that the letter alluded to above was incorporated into his Complaint by reference and this

makes it clear what cause of action is being asserted against ALPS.  He contends that ALPS was

under a duty, based on his status as a third party beneficiary to the insurance contract, to

intervene in the matter once it was notified of the claim against the Attorney and negotiate a

modification of the two loans to mitigate any damages caused.  He argues that, because ALPS

has maintained silence despite these repeated requests to act for the benefit of the Attorney and

the Debtor, he has a valid cause of action under the implied duty of good faith and fair dealing

even if the Attorney is ultimately not found liable.


## DEFENDANTS' REPLY BRIEFS

In their reply briefs, all three Defendants argue that the Debtor has not been fully

responsive to their arguments in their motions and is instead trying to allege new facts or raise

new legal theories.  They argue that this amounts to an attempt to impermissibly amend the

Complaint to cure the defects they highlighted in their motions and should not therefore be

permitted.  The Defendants nevertheless address the new arguments and assert that the

allegations are still defective.

The Bank first argues that, contrary to the Debtor's assertions, HAMP is not mandatory on lenders.  It also argues that it never entered into a contract to modify the terms of the Debtor's loans.  It admits that it sent the Debtor applications, but these were merely offers to consider the Debtor's application for a loan modification, not an offer to modify the mortgage. The Bank therefore argues that no contract was created which could have given rise to any breach of contract claims under HAMP.  Next, it argues that the Debtor's allegations about its refusal to communicate with him appear to allege that the refusal violated a duty owed to the Debtor under the HAMP guidelines.  It therefore appears that Debtor is alleging a tort.  The Bank argues that the Debtor is attempting to repackage his argument that it had breached a contract to modify the terms of the loans into a tort.  The Bank says that this is impermissible. Any duty owed arose from a contract, so it must be asserted as a breach of contract claim instead of a tort claim.  With regard to the Debtor's allegation that it breached an implied duty of good faith and fair dealing, the Bank argues that any such duty would apply to the original contract terms and would not give rise to any duty to renegotiate those terms.  It argues that neither Virginia law nor the common law imposes a duty on a lender to consider a modification of previously agreed to contract terms.  In addition, it argues that there is no independent tort claim for the breach of an implied duty.  The claim must, it argues, be brought as a breach of contract claim, and the Debtor has failed to plead any of the elements necessary to bring a breach of contract claim.  Although the Debtor makes the bald assertion that its conduct with regard to HAMP constitutes fraud, the Bank argues that the Debtor has failed to allege any of the elements of a fraud cause of action and has not alleged any facts to make the claim plausible.  It also notes that Debtor raised the new claim that he is eligible for EHLP relief and that the Bank breached a duty to him under that program.  The Bank argues that the program only became effective on

17

April 4, 2011, which was after the date this case was filed.  It therefore argues that the Debtor

should be estopped from asserting the claim as the Bank could not violate any duty under a

program that was not yet in existence.

      The Attorney begins by noting that the Debtor has alleged no relevant facts

supporting the allegation that the malpractice cause of action belongs to him rather than the

estate.  He again argues that any malpractice that he committed in his representation regarding

the bankruptcy case was committed against the estate and not the Debtor, so the Trustee should

bring the case.  He next argues that the Debtor has failed to state a claim for malpractice.  He

notes that the Debtor declines to acknowledge that reaffirmation is voluntary on the lender and

insists that the Bank was required to modify the loans pursuant to HAMP and EHLP.  The

Attorney argues that these programs are separate from reaffirmation and that reaffirmation is

voluntary with the lender.  Therefore, regardless of whether he actively assisted Debtor with

pursuing a reaffirmation of the loans, it was unavailable to the Debtor because the Bank refused

to discuss the matter with the Debtor.  The Attorney therefore argues that he breached no duty

owed to the Debtor by failing to obtain a reaffirmation agreement that could not be obtained.

      Next, the Attorney again argues that he would be required to certify that any

reaffirmation agreement would not present an undue hardship on the Debtor.  He argues that the

Debtor has not alleged any facts to suggest the Attorney would have made the certification.  The

Attorney notes that the Debtor claims that he is ignoring three income sources that would allow

the Debtor to make the mortgage payments.  The first source is rental income.  However, the

Attorney says that he could not have relied on this in making any certification because the

Debtor admits that the units were not fully rented until October 1, 2010, which is after he was

discharged.  In addition, before the discharge was issued, the Debtor's case with the City of

18

Roanoke was still pending, so any rent collected from a tenant who was not a family member violated the local zoning ordinance. Similarly, the Attorney could not have relied on the possibility of a loan from the Debtor's wife because the proceeds of the loan were not deposited into the Registry of Court until May 20, 2011, which is again well after the issuance of the discharge. He also could not rely on the proceeds of the life insurance policy as the income stream depends on the Debtor's death.

The Attorney also disputes the Debtor's contention that he filed the Certificate of Debtor Education inadvertently. The Attorney again argues that, if the certificate had not been filed, the case would have been closed without the issuance of a discharge. He therefore argues that he filed the certificate intentionally to preserve the Debtor's right to discharge.

As to HAMP, the Attorney argues that the Debtor has failed to show that he was eligible for relief. The Attorney also argues that the Debtor is mistaken that HAMP is mandatory on lenders. He argues that the Bank has discretion under HAMP as to whether to modify the loan, so he could not be liable for a failure to procure a modification for the Debtor when the Bank refused to discuss any modification. Finally, he again argues that HAMP is still available after the discharge, so the Debtor has not been damaged by any alleged failure to obtain relief under the program prior to the entry of the discharge. In response to the Debtor's argument that he was eligible for EHLP relief, the Attorney, like the Bank, argues that the program only became effective on April 4, 2011, which is after the date of the discharge. The Attorney could not therefore assist the Debtor in obtaining a modification under the program since it did not yet exist.

ALPS's reply argues that the Debtor's malpractice action must fail as a matter of law because the Debtor admits that he and the Bank could not agree on the terms of a

19

reaffirmation agreement, so the Attorney could not have committed malpractice by failing to submit the hypothetical agreement.  Furthermore, the Debtor admits that reaffirmation is voluntary and the Bank would not discuss it with him.  He also admits to misplacing the reaffirmation forms, meaning his own contributory negligence led to any alleged loss.  ALPS reiterates its argument about the Debtor's lack of standing to pursue a direct action against it.  It then argues that the Debtor has not addressed its argument that it is properly registered with Virginia and has therefore conceded the argument on this issue.  ALPS argues that this case is precisely the kind of case that should be dismissed at the earliest possible moment, before the expense of discovery is undertaken.  It therefore asks the Court to dismiss the case with prejudice.

## CONCLUSIONS OF LAW AND DECISION

This Court has statutory authority to exercise jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  Although there is little else that the parties agree upon, it does appear that they agree that the claims advanced in the adversary proceeding are ones "arising in" a case under the Bankruptcy Code within the scope of 28 U.S.C. § 1334(b). Accordingly, under the language of 28 U.S.C. § 157(b)(1), as interpreted by the Supreme Court in its recent decision in the case of *Stern v. Marshall*, __ U.S.___, 131 S.Ct. 2594, 2604-05 (2011), these claims must be deemed to be "core" bankruptcy proceedings, a conclusion which the parties also share.

While the claims asserted in this adversary proceeding may qualify as "core" proceedings, they have nothing to do with the actual administration of the bankruptcy case. They concern the Debtor's attempts to obtain a restructuring of mortgage debt upon which he

20

was personally liable, as is the Trust, and which is secured by real property owned jointly by him

and the Trust, which was created by his now deceased father and of which he is the trustee.  Mr.

Allen, the (Chapter 7) Trustee, on January 28, 2011 filed his Final Report in the underlying case

in which he indicated that the bankruptcy estate's interest in the property would be abandoned at

the closing of the case.[3]  The resolution of the adversary proceeding will not affect in any

manner the bankruptcy estate created by § 541 of the Bankruptcy Code or any creditor claims

against that estate nor any right of the Debtor to exempt property.  While the Court does have

statutory jurisdiction over the adversary proceeding, its determination does not involve any right

or interest arising under the Bankruptcy Code.  Accordingly, under the Supreme Court's recent

decision in *Stern v. Marshall*, the question is presented whether this Court has the constitutional

authority to enter a final judgment in this proceeding.  Although the precise issue considered in

that decision, which was a bankruptcy debtor's state law counterclaim filed to a creditor's proof

of claim, is not presented here, the ruling's underlying rationale dealing with the exercise of

judicial power by non-Article III judges is considerably broader than the specific holding.  Here

all the parties are agreed as to the "core" nature of the issues presented and none has raised any

issue since the release of the *Stern v. Marshall* decision about this Court's authority to enter a

final judgment in this matter.  Because this Court is dismissing the Complaint on the pleadings

and an appeal from its judgment would be to the same District Court which has delegated to it

authority to enter judgments in "core" proceedings, the Court concludes that its entry of such a

judgment here is in accord with the expectations of the parties and is the proper action for the

Court to take based on the circumstances presented and the unsettled questions arising from the

---

[3] This history is recounted in this Court's Memorandum Decision dated February 10, 2011 granting Wells Fargo's Motion for Relief in this case at docket item number 67.

Supreme Court's ruling in *Stern*.

ALPS

The claims made against ALPS must be dismissed because, most fundamentally, Mr.

Reynolds is not insured under the professional liability insurance policy the former issued to the

Attorney and under applicable Virginia law Mr. Reynolds is not a third party beneficiary of the

insurance contract or otherwise endowed with the right to bring a direct action against the

insurer.  Nor does he allege the existence of any policy provision which accords him such an

entitlement.  Accordingly, he has no standing to haul ALPS into court in order to compel the

insurer to enter into settlement negotiations with him with respect to the damage that he claims

to have suffered as a result of the Attorney's alleged negligence.  Furthermore, for the reasons

hereafter noted, the Court concludes that Mr. Reynolds has no viable claim against ALPS's

insured, the Attorney, and owes no independent duty to the Debtor.  Therefore, the Court need

not consider the possible merit of the many other arguments which ALPS has made in support of

its motion.

The statutory law of the Commonwealth of Virginia provides in § 55-22 of its

Code that a person not a party to an "instrument" may maintain an action upon it in his own

name "if a covenant or promise be made for the benefit, in whole or in part, of [such] person[.]"

This is the applicable Virginia law which deals with the right of a claimed third party beneficiary

of a contract, which is the legal status which Mr. Reynolds asserts that he has with respect to the

ALPS policy of insurance, to make a direct claim under it.  Although the Debtor asserts broadly

that he is a third party beneficiary of the policy issued to the Attorney, he has cited no case

authority or alleged the existence of any policy provision upholding that contention.  The Court

for its part is not aware of any such authority and notes that the Virginia courts have been

22

consistent in requiring a demonstration that the parties to a contract intended to make their

agreement for the benefit of some other party in order for such other party to enjoy the right

accorded by § 55-22.  *See* Bankruptcy Judge Tice's excellent discussion of the relevant

principles and citation of relevant authorities in the case of *Fireman's Fund Ins. Co. v. St. Asaph

Lawyer's Title Co. (In re Dameron)*, 213 B.R. 482, 483-84 (Bankr. E.D. Va. 1997).

Furthermore, the Commonwealth has expressly dealt with the subject of direct actions by

claimants under liability insurance policies in section § 38.2-2200 of the Code of Virginia and

has provided for such direct actions only after the claimant has obtained an unsatisfied judgment

against the insured under the policy.  Obviously Mr. Reynolds does not enjoy that position.

Neither is there any indication that any different rule is applicable for a client of a Virginia

attorney who wishes to assert a claim under the lawyer's professional liability policy.  Although

the Rules of the Supreme Court of Virginia require practicing attorneys to disclose to the State

Bar whether or not they have professional liability insurance and any termination of such

insurance,[4] there is no obligation under Virginia law for attorneys to carry such insurance for the

benefit of their clients nor any statutory provision giving clients or former clients any right to

make a direct claim against a professional liability insurer prior to obtaining a judgment

establishing liability on the lawyer's part.

       For reasons detailed in the next section of this Memorandum Decision, the Court

concludes that the Attorney has no liability to the Debtor under the undisputed facts and

pertinent law applicable to this dispute.  The Court further concludes that the only connection

which ALPS has to Mr. Reynolds is by reason of its liability insurance policy issued to Mr.

---

[4] Va. Sup. Ct. Rule pt. 6, sec. IV, par. 18.

23

Delafield and that it has no independent duty of any kind to either the Debtor or the Trust.

MR. DELAFIELD

Even if Mr. Delafield was professionally negligent, as Mr. Reynolds asserts, and even if the Debtor, rather than the Chapter 7 Trustee, has standing to assert some claim against him by reason of such negligence, the Complaint nevertheless must be dismissed as to the Attorney as well because, under the facts alleged and otherwise appearing in the written and oral arguments advanced here by Mr. Reynolds, it simply is not plausible that either the Debtor or the Reynolds Trust has suffered any legally cognizable harm as a result.

The Debtor's decision to make a claim against his own bankruptcy counsel as a result of his failed efforts to enter into a reaffirmation agreement with the Bank with respect to the mortgage obligations and to obtain from it a negotiated modification of such obligations apparently stem from his belief that such an agreement would have prevented foreclosure upon the property owned by the Trust.[5]  It is true that the failure to timely reaffirm a debt pursuant to a statement in the petition of an intent to do so results in a termination of the automatic stay with respect to **personal** property,[6] but of course the Debtor is concerned about foreclosure of the Bank's lien against real property.  The general understanding is that the bankruptcy debtor who will benefit post-bankruptcy from a reaffirmed secured obligation is one who is current in his or her payments on the debt to a secured lender and wishes to preclude the possibility that the lender might attempt to declare a default and foreclose upon its collateral in reliance upon a

---

[5] "Reaffirmation forestalls and presents foreclosure."  Complaint, ¶ 25.

[6] 11 U.S.C § 362(h)(1).

24

contract provision making the granting of a discharge an event of default, thereby triggering a right of repossession and sale of the collateral.  It is important to note that the Debtor commenced his bankruptcy case under Chapter 13, which is the chapter that individual debtors ordinarily file under for the purpose of curing a payment default on a secured obligation during the term of a confirmed plan.  After only a few months, however, he converted his case, as was his right, to Chapter 7, the liquidation chapter.  He has never suggested any disagreement with that decision or Mr. Delafield's part in it.  He has never disputed that the mortgage obligations to the Bank became delinquent during the progress of the bankruptcy case nor made any suggestion that such default in payments was in any manner attributable to the Attorney.

Even if the Debtor had entered into a reaffirmation agreement to which the Bank had consented and even further if Mr. Delafield had been willing before the discharge was granted to sign[7] the certification required of him by 11 U.S.C. § 524(c)(3), which would have been necessary for such agreement to have been legally effective, such facts would not have prevented the Bank from commencing foreclosure because the mortgage loans had not been brought current.  In his arguments Mr. Reynolds even concedes that the Bank was not willing to enter into a reaffirmation agreement.  What he wanted and desperately needed, however, was an agreed reaffirmation of the debt upon modified terms.  Mr. Reynolds, an attorney himself who became a licensed lawyer over thirty-five years ago,[8] seems to have convinced himself that his bankruptcy counsel, Mr. Delafield, could somehow have compelled Wells Fargo to agree to some modified terms of paying the mortgage debt which were more in keeping with the

---

[7] A supposition which the Debtor has neither specifically alleged in the Complaint or asserted in his arguments.

[8] Plaintiff's Memorandum on Five Jurisdictional Bases, ¶ 4.

25

borrowers' straightened financial circumstances, apparently by enlisting the equitable powers of

the bankruptcy court.  Such a belief runs headlong, however, into what appears to be controlling

authority that the HAMP program does not create or permit any private right of action in favor of

mortgage obligors, but rather delegates sole enforcement authority to "Freddie Mac."  *Zeller v.

Aurora Loan Services, LLC*, 2010 WL 3219134 at *1 (W.D. Va. Aug. 10, 2010) (Moon, J.),

quoting from *Marks v. Bank of America, N.A.*, 2010 WL 2572988 (D.Ariz. June 22, 2010).  *See

also Ellis v. Wells Fargo Bank, N.A.*, 2011 WL 3439218 at *3-4 (E.D. Va. Aug. 5, 2011) (Davis,

J.); *Paine v. Wells Fargo Bank, N.A.*, 2011 WL 3236390 at *4 (E.D. Va. July 12, 2011) (Davis,

J.); *Sherman v. Litton Loan Servicing, LP*, 2011 WL 2634097 at *6 (E.D. Va. July 5, 2011)

(Davis, J.); *Acuna v. Chase Home Fin., LLC*, 2011 WL 1883089 at *3–4 (E.D. Va. May 17,

2011) (Spencer, J.); *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 1306311 at *3-4

(E.D. Va. April 1, 2011) (Hudson, J.).  Indeed Mr. Reynolds cites no authority whatsoever, other

than his own assertions, that such a right enforceable in the bankruptcy courts, or any other

courts for that matter, exists.  Therefore his contention that the Bank is obliged to entertain his

application under HAMP because it accepted TARP funds from the government is entirely

beside the point, which is that he has not been empowered under this program to bring Wells

Fargo to account in this Court or any other court for its perceived abuses, but has been relegated

to making a complaint with "Freddie Mac" or possibly the Treasury Department.

   While Mr. Reynolds clearly feels aggrieved and indeed indignant at what he

considers the Bank's unwillingness to work with him to modify the mortgage indebtedness to

reflect current economic realities, that rigidity is not something which reasonably can be laid at

the Attorney's feet.  The principal object of a Chapter 7 bankruptcy case for an individual is to

obtain a discharge from personal liability for debt, which is the event which provides the "fresh

26

start" to which the Debtor alludes in his arguments.  It is clearly not a proper use of the Chapter 7 process to attempt to maintain the automatic stay in effect for as long as possible, for the purpose of keeping secured creditors at bay, by delaying unreasonably, but not foregoing, the granting of such a discharge.

The fact that the Debtor, months after the events in issue occurred, secured from his fiancée a loan, which has been paid into the Registry of this Court for the apparent purpose of demonstrating his ultimate financial capacity to bring the mortgage loans current, adds no weight to his claims against the Attorney.  Mr. Delafield had to work with the tools available to him at that time, not ones supplied by his client after the latter decided to add him to his possible sources of financial succor.  Perhaps the most striking example of the Debtor's novel arguments and contentions is his suggestion that a life insurance policy upon his life, apparently a term policy, owned by the Trust which would provide funds to it which could be used to pay the mortgages **if** he were to die before the expiration date of the policy, is a financial resource which has relevance to the issues raised in this proceeding.  If Mr. Reynolds had enjoyed access to credit when he began his case, it seems apparent that he would have used that to remain in Chapter 13 and propose a confirmable plan, rather than converting his case to Chapter 7.

Finally, the lack of a reaffirmation agreement with the Bank and the issuance of the discharge to the Debtor do not appear to preclude the latter even now from filing an application under the HAMP program.  Indeed the Treasury Department has issued a directive expressly providing that "[b]orrowers who have received a Chapter 7 bankruptcy discharge in a case involving the first lien mortgage who did not reaffirm the mortgage debt under applicable law are eligible for HAMP."  Supplemental Directive 10-02, March 24, 2010, quoted in Bankruptcy Judge Duncan's decision in the case of *In re Tincher*, 2011 WL 2650569 at *3

27

(Bkrtcy. D.S.C. July 5, 2011).  Judge Duncan expressly followed an earlier decision by

Bankruptcy Judge Mayer of the Eastern District of Virginia that the mortgagee may not require

prior execution of a reaffirmation agreement as a condition of considering a HAMP application.

*Tincher* at *3, quoting from *In re Pope*, 2011 WL 671972 at *1 (Bkrtcy. E.D. Va. Feb. 17, 2011).

*Accord In re Bellano*, 2011 WL 3563012 at *4 (Bkrtcy. E.D. Pa. Aug. 11, 2011) (Raslavich, J.).

In summary, it appears that Mr. Delafield did his client a favor rather than in any way

prejudicing him.

WELLS FARGO

Wells Fargo's motion to dismiss is also well founded because, as already detailed

in the preceding section of this opinion, there is no private right of action for any alleged

violation of the federal government's HAMP program.[9]  In the absence of some enforceable

obligation upon the Bank to modify the Debtor's mortgage indebtedness, there is similarly no

legal duty on its part to enter into negotiations for that intended purpose.  This Court concludes

that it is without authority to force the Bank to the table to negotiate with Mr. Reynolds a new

repayment arrangement for either of the mortgage obligations at issue.

The Debtor's contention that the Bank's unwillingness to deal with him violated

duties of good faith and fair dealing owing to him and the Trust as the obligors upon its notes is

likewise without merit.  This Court has previously dealt with a similar argument made by a

---

[9] The Court has also considered the Debtor's allegations with respect to the federal
government's Emergency Homeowners' Loan Program upon which an Interim Rule was issued
effective as of April 4, 2011.  This program provides funding for emergency loans to
homeowners who have "incurred a substantial reduction of income . . . as a result of involuntary
unemployment or underemployment due to adverse economic or medical conditions, or such
other reduction in income as may be specified by HUD."  24 CFR § 2700.110 (b), 2011 WL
741938 (F.R.).  The Court concludes that nothing about this program changes its analysis of the
issues presented in the Complaint and the defendants' motions to dismiss.

commercial borrower from Wells Fargo's predecessor, Wachovia Bank National Association, as

follows:

> In count sixteen the Debtor alleges Wachovia breached implied
> duties of good faith and fair dealing.  Va. Code § 8.1A-304 provides
> that "[e]very contract or duty within the Uniform Commercial Code
> imposes an obligation of good faith in its performance and
> enforcement."  However, as Comment 1 to this section notes:
>
>> This section does not support an independent cause of
>> action for failure to perform or enforce in good faith.
>> Rather, this section means that a failure to perform or
>> enforce, in good faith, a specific duty or obligation
>> under the contract, constitutes a breach of that
>> contract or makes unavailable, under the particular
>> circumstances, a remedial right or power.
>
> Va. Code § 8.1A-304 (cmt. 1).  As the Virginia courts have held,
> there can be no breach of this duty when a party is "enforcing"
> contractual rights.  *Albright v. Burke & Herbert Bank & Trust Co.*,
> 457 S.E.2d 776, 778 (Va. 1995) (citing *Mahoney v. NationsBank of
> Virginia*, 455 S.E.2d 5, 8 (Va. 1995)).  In considering the former
> statute,[10] which essentially mirrors the current version, the Supreme
> Court of Virginia held that "the failure to act in good faith . . . does
> not amount to an independent tort.  The breach . . . gives rise only to
> a cause of action for breach of contract."  *Charles E. Brauer Co., Inc.
> v. NationsBank of Virginia, N.A.*, 466 S.E.2d at 385.

*Barber & Ross Co. v. Wachovia Bank Nat'l Ass'n (In re Barber & Ross Co.)*, A. P. No. 09-

05083, Slip Op. at p. 30 (Bankr. W.D. Va. April 5, 2010).  There is no allegation here that the

contract contained any provision requiring the Bank to negotiate some alteration in its terms by

reason of its borrowers' financial difficulties.  Nor does the law generally require any such

action.  Accordingly, by simply declining to make a new agreement with the Debtor or to

entertain such a possibility, the Bank violated no duty of good faith or fair dealing under

Virginia law.

---

[10] Va. Code § 8.1-203 (1964) (repealed 2003).

29

## DISMISSAL WITHOUT LEAVE TO AMEND

It is the Court's normal practice when sustaining a motion to dismiss on the pleadings to allow the plaintiff an opportunity to amend and plead over.  That is not the practice the Court will follow here, however.  At the conclusion of the oral arguments on the motions the Court inquired of Mr. Reynolds if he had any additional facts which he might wish to set forth in an amended complaint if the Court were to grant the dismissal motions before it.  Mr. Reynolds answered in the negative.  Furthermore, after a full consideration of these matters, the Court is quite well satisfied that there is no underlying merit to the claims which the plaintiff is attempting to assert in this adversary proceeding and that the ends of justice would not be served by allowing him any further opportunity to litigate them here.  For that reason, the Complaint will be dismissed with prejudice as to all defendants and the Clerk will be directed when this judgment has become final to return the money paid into the Registry of this Court, less any compensation to which the Clerk may lawfully be entitled, to its rightful owner.  An order to such effect will be entered contemporaneously herewith.

Decided this 6th day of September, 2011.

_William F. Stone, Jr._

UNITED STATES BANKRUPTCY JUDGE